**STATE v. ALL THE OIL AND PRODUCTS OF OIL SITUATED IN CERTAIN PITS IN UPSHUR COUNTY et al.**

No. 9094.

Court of Civil Appeals of Texas. Austin.

May 28, 1941.

Rehearing Denied July 2, 1941.

Gerald C. Mann, Atty. Gen., and Tom D. Rowell, Jr., Asst. Atty. Gen., for appellant.

McCraw & Holt, of Dallas, for appellees.

BLAIR, Justice.

As concerns this appeal, appellant, the State of Texas, sued appellee, P. H. Pewitt, under the provisions of Art. 6066a, Vernon's Ann.Civ.Statutes, Acts 1935, 44th Legislature, p. 624, to confiscate and forfeit 36,000 barrels of fuel oil located in a certain earthen pit in Upshur County, described as Pit A. Appellee impleaded the Railroad Commission and sought to enjoin it from interfering with his moving the fuel oil in commerce. The State alleged that the crude oil from which the fuel oil had been refined or processed, was produced, transported, and handled in violation of the valid orders and rules of the Commission and the conservation laws; and that it had been refined, processed, blended with, and derived from crude oil produced in violation of the valid orders and rules of the Commission and the conservation laws; thereby constituting such fuel oil a nuisance within the terms of the conservation laws and subject to confiscation and forfeiture by the State under the provisions of Art. 6066a, supra. By his answer to the State's suit and by his cross-action against the Commission, appellee alleged that the 36,000 barrels of fuel oil was not illegal oil and was not subject to confiscation and forfeiture; but that it had been refined or processed from crude oil on hand prior to December 10th, 1934, which had been purchased and owned by appellee in due course of business; and that the fuel oil had been continuously stored in the earthen pit in compliance with the orders and rules of the Commission and the conservation laws. In reply the State and the Commission further alleged that the claim of appellee that approximately 140,000 barrels of fuel oil had been stored in the pit prior to December 10th, 1934, had been previously litigated in Cause No. 54,932, Wm. H. McKain, DBA Wm. McKain Fuel Oil Co. v. Railroad Commission of Texas, et al., 98th District Court of Travis County, wherein plaintiff claimed that it had stored in said pit prior to December 10th, 1934, 104,000 barrels of fuel oil, and obtained a final judgment enjoining the Commission from interfering with the movement in commerce of the 104,000 barrels of fuel oil from the pit. The Commission also alleged that the fuel oil had not been inventoried with the Commission as required by its orders of December 10th, 1934 and February 1st, 1935, to be filed by February 15th, 1935. In reply appellee alleged that the fuel oil moved under the injunction issued in the aforementioned suit was based upon estimations of the amount of oil in the pit; that it was inventoried with the Commission on estimations of the amount of oil in the pit; and that after the 104,000 barrels of oil were moved from the pit under the injunction and under the supervision of the Commission, there remained from 35,000 to 40,000 barrels of fuel oil, which had been stored in the pit prior to December 10th, 1934, and that no other fuel oil had been placed in the pit.

The case was tried to the court without a jury, the court overruling the contention that the claim of appellee to the 36,000 barrels of fuel oil had been previously adjudicated against appellee in the aforementioned suit, and decreed that such oil was legal and not subject to confiscation and forfeiture by the State and enjoined the Commission from interfering with the movement of said fuel oil in commerce, the judgment reciting as follows: "The Court further finds that as to the 36,000 barrels of fuel oil, a product of crude oil, described in the first amended answer and cross-action of the cross-acting defendant, P. H. Pewitt, which is a part of the crude oil and products of oil described in plaintiff's original petition, the law as well as the facts are against the plaintiff, State of Texas, and cross-defendant, Railroad Commission of Texas, and are with the cross-acting defendant, P. H. Pewitt. That the said 36,000 barrels of products of oil is lawful oil and was not transported, processed, refined, treated, or in any other

manner handled in violation of the orders, rules and regulations of the Railroad Commission of Texas, nor of the laws of the State of Texas. That said 36,000 barrels of products of oil is not illegal or unlawful products of oil and is not subject to be confiscated and forfeited to the State of Texas. That said 36,000 barrels of products of crude petroleum oil was manufactured and on hand prior to December 10, 1934. That it was a product of crude petroleum oil not in the hands of the original refiner, but had been purchased in due course of business and was owned and held in compliance with all the rules, regulations and orders of the Railroad Commission of Texas. That as to said 36,000 barrels of products of oil the cross-defendant herein, P. H. Pewitt, is entitled to the relief prayed for in his first amended answer and cross-action."

■ Appellants contend by their first three propositions that the undisputed evidence showed that the 36,000 barrels of fuel oil was unlawful oil: (1) Because processed from crude oil produced, transported and handled in violation of the orders of the Commission and the conservation laws, and was not a part of the fuel oil purchased and stored in Pit A prior to December 10th, 1934; and (2) because if it were on hand December 10th, 1934, it was not inventoried with the Commission as required by its orders of December 10th, 1934 and February 1st, 1935.

We regard the evidence as conflicting and as fully supporting the above-quoted findings of fact of the trial court. The testimony showed that Wm. H. McKain, DBA Wm. H. McKain Fuel Oil Company purchased for appellee crude oil and refined or processed it through a plant located near the pit. These refined products or fuel oil were run into the pit prior to December 10th, 1934, on which date several witnesses testified that the pit was full of oil. Several witnesses estimated the capacity of the pit as of that date to be 140,000 barrels. The Commission's orders of December 10th, 1934, and February 1st, 1935, required that by-products and fuel oil be inventoried with the Commission by February 15th, 1935, and thereafter the Commission required that dealers or owners obtain permits or tenders to move such by-products or fuel oil in commerce. Appellee filed his inventory of the oil in the pit on February 15th, 1935, estimating the fuel oil at 104,000 barrels. The inventory was based upon records of purchases prior to December 10th, 1934, and upon an estimated capacity of the pit, no actual measurement of it being made. The Commission refused McKain Company a tender to move the fuel oil in commerce and by its aforementioned suit it obtained a judgment dated January 19th, 1935, restraining the Commission from interfering with the movement of 104,000 barrels of fuel oil out of the pit, and later on April 4th, 1935, the Commission issued appellee a tender to move the 104,000 barrels of fuel oil. The movement of the 104,000 barrels of fuel oil was made under the supervision of the Commission's agents in 1935, and according to their testimony and the testimony of other witnesses there remained in the pit from 30,000 to 50,000 barrels of fuel oil after the 104,000 barrels were removed, of which the trial court decreed 36,000 barrels to be the lawful oil of appellee.

The testimony was undisputed that the Commission accepted inventories on earthen pits as estimations of the amount of oil therein by those filing inventories under its orders of December 10th, 1934, and February 1st, 1935; and that its agents thereafter permitted the oil to be moved in commerce upon the amounts of oil actually in the pits rather than upon the estimates contained in the inventories. Typical of such testimony is that of the Commission's agent, Renshaw, as follows: "I have had a lot of experience with those inventories. At the time those inventories were filed, as to whether they were filed on accurate gauges or by best estimate, some were filed on the amount they had bought, the amount they paid for and most of them were filed on estimates. As to my experience in seeing these pits emptied, one after another, with reference to variation between the estimated amount as shown by the inventory and the amount they actually pumped out before the pits went into effect over there in 1935, when they first began the pontoons, there were great variations between our estimations and what was actually taken out of the pit. Sometimes twice as much was taken out of the pit as what we estimated."

It is true that the State showed by its engineer witness, Guinn, that the pit had a capacity of about 124,000 barrels more than five years after it was built. But this did not conclusively establish its capacity as of date of December 10th, 1934, and particularly so since the

proof showed that the pit was in a field on a sandy hillside and had accommodated the sand washed in by rains for more than five years prior to the time witness made his measurements. The witnesses also testified without dispute that there remained in the pit from 35,000 to 40,000 barrels of oil after the removal of the 104,000 barrels in 1935.

■ Nor is there any merit to the contention that appellee did not file an inventory of the oil in question with the Commission as required by its orders of December 10th, 1934, and February 1st, 1935. He filed an inventory estimating the oil in the pit to be 104,000 barrels. Under the undisputed practices of the Commission as hereinabove stated this entitled him to move the oil actually in the pit and not the amount estimated in the inventory. This question relates only to the injunction against the Commission restraining it from interfering with the movement of the oil in commerce.

■ By propositions 4 and 5 appellants contend that the court erred in overruling their plea of res adjudicata and estoppel based upon the aforementioned judgment enjoining the Commission from interfering with the movement of 104,000 barrels of oil as inventoried by appellee. These contentions are not sustained because the inventory merely estimated the oil at 104,000 barrels and the case was tried upon testimony showing that the pit contained an estimated 104,000 barrels of oil. Neither the judgment nor the inventory determined that there was actually in the pit 104,000 barrels of oil and no more. It actually did contain more oil according to the evidence adduced and the findings of the trial court, and under the practices of the Commission with respect to the estimated amounts of oil inventoried in earthen pits, appellee was entitled to move all of the oil actually in his pit, the court having found it to be lawful oil.

An entirely similar question was decided by this court in the recent case of Railroad Commission v. Stephens, 147 S.W.2d 879, wherein it was held that a judgment which found "approximately" 57,050 barrels of oil to be in an earthen pit, did not deprive the party entitled to the oil from receiving a tender to remove approximately 26,739 barrels of oil that remained in the pit after the removal of the 57,050 barrels covered by the judgment.

■ Furthermore, to sustain their plea of res adjudicata and estoppel, the appellants must show an identity of cause of action, of issues involved and persons, and there must be a trial on the merits. Philipowski v. Spencer, 63 Tex. 604; Valdez v. Yoe, Tex.Civ.App., 39 S.W.2d 122; Palmer v. Bizzell, Tex.Civ.App., 229 S.W. 971. The issue in aforementioned suit of McKain Company was for a permit or tender to move approximately 104,000 barrels of fuel oil in commerce. It was against the Railroad Commission, which had no authority to confiscate the oil, and confiscation is the sole basis of the State's suit in the instant case. In the first suit McKain Company pleaded that it "bought and now owns and possesses approximately 104,000 barrels of fuel oil" stored in the pit in question, and as above held the judgment authorizing it to move that estimated amount of oil in commerce did not deprive it of the right to move all of the oil actually in the pit at the time, the court in the instant suit having determined the legality of the remaining oil.

■ By their remaining proposition appellants contend that the trial court erred in refusing to permit witness Jack Cowley to testify to statements made to him by Wm. H. McKain, appellee's alleged predecessor in the title to the fuel oil in question, which statements tended to show that said oil was refined from illegal crude oil supplied to McKain by appellee prior to December 10, 1934. This proffered testimony did not tend to show the source of the crude oil from which the fuel oil in suit was refined. The testimony went no further than that McKain told witness that he and appellee Pewitt were purchasing the oil and operating the refinery plant under some sort of partnership arrangement. This was not denied but was admitted by McKain and Pewitt. Pewitt purchased McKain's interest after December, 1934, and prior to February 15, 1935. McKain's testimony had not been attacked, he was the State's witness and it had no right to bolster up his testimony by this witness, nor to impeach it without laying a proper predicate to do so. The title to the oil was not involved except that it was subject to confiscation if produced or transported in violation of law, and witness stated that he knew nothing of the actual source of the oil; and that McKain told him that the fuel oil in the pit was from crude oil run through the plant. Each

McKain and Pewitt so testified; and each testified that the crude oil run through the plant was purchased by them in the open market and as innocent purchasers prior to December 10, 1934.

The judgment of the trial Court is affirmed.

Affirmed.